E-FILED
Thursday, 04 February, 2016  08:52:36 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| GUADALUPE L. PADILLA,<br>　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>　　Defendant. | Case No. 4:15-cv-04023-JEH |

## Order and Opinion

Guadalupe Padilla, Plaintiff, protectively filed his application for Supplemental Security Income (SSI) benefits on April 11, 2012, alleging that he became disabled on March 31, 2012. In a Notice of Disapproved Claim dated June 11, 2012, Padilla was denied his claim. On June 22, 2012, Padilla asked for a reconsideration of his claim. The Commissioner denied his reconsideration request on August 31, 2012.

On October 3, 2012, Padilla filed a Request for Hearing by Administrative Law Judge. The hearing was held on January 8, 2014, before Administrative Law Judge (ALJ) Barbara J. Welsch. Padilla was present and was represented by counsel. Also testifying was George Paprocki, a vocational expert. The ALJ issued an unfavorable decision dated January 30, 2014. On February 14, 2014, Padilla filed a request for Review of Hearing Decision with the Appeals Council. In a Notice of Appeals Council Action dated January 20, 2015, the Appeals Council denied Padilla's request for review. Having exhausted his administrative remedies, Padilla timely filed his Complaint in this action on March 5, 2015, pursuant to 42 U.S.C. §1383(c)(3).

The Plaintiff having filed his Motion for Summary Judgment (D. 11) and the Defendant having filed her Motion for Summary Affirmance (D. 15), the matter is ripe for ruling.[1] For the reasons stated herein, the Plaintiff's motion is GRANTED and the Defendant's motion is DENIED.[2]

I

A

From February 6, 2012 through December 30, 2013, Padilla visited his psychiatrist, Dr. John Ciaccio, at least thirteen times. Each and every time Padilla visited Dr. Ciaccio, he diagnosed him with, among other things, panic disorder with agoraphobia and social phobia—this diagnosis was consistent throughout the course of the nearly two years of Dr. Ciaccio's treatment of Padilla. In support of this diagnosis, Dr. Ciaccio's treatment notes indicate things such as the following:

- "He is not really able to leave the house, not able to watch his children and not able to get a job." (D. 7-1 at ECF p. 84)
- "He still has a lot of worrying. . . He still has agoraphobia." (D. 7-1 at ECF p. 98)
- "The patient has social phobia and that has not improved with the medication change. He still avoids going out in crowd. Panic disorder, he is having them 3 times a week, but he feels that increase in Celexa has helped with those." (D. 7-1 at ECF p. 99)
- "This is the first time in a week that he has been out of the house. His anxiety, he rates as a 5 out of 10 and has gotten better with the medicine also." (D. 7-1 at ECF p. 101)

---

[1] Citations to the record in this case are to the Docket Number of the relevant document as well as specific CM/ECF page numbers where applicable, in the following format: (D. # at ECF p. #).
[2] The parties consented to a U.S. Magistrate's jurisdiction in this case. (D. 12).

- "The patient gets about 2 to 3 times a week, a panic attack. This is good for him. He does not really leave the house much, but is pleased with where the medicine is at." (D. 7-1 at ECF p. 137)
- "A lot of it is due to anxiety. Panic attack, he has had 2 to 3 episodes in the past 6 weeks, which is good for him." (D. 7-1 at ECF p. 139)
- "The patient's panic attacks are mild. He is happy with the medication and feels that it is working as well as it can." (D. 7-1 at ECF p. 140)

Dr. Russell Taylor, M.D., an agency psychologist tasked with providing his medical expert opinion of the effects of Padilla's mental impairments on his ability to perform work-related functions had access to Dr. Ciaccio's treatment notes and diagnoses. Dr. Taylor concluded that Padilla had a severe impairment of "anxiety disorders," which, according to Listing 12.06, can include a panic disorder as diagnosed by Dr. Ciaccio. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. (D. 7 at ECF p. 126). Because of the "anxiety related disorders," he found that Padilla had "moderate" limitations in the areas of activities of daily living; social functioning, and concentration, persistence, or pace. Specifically, he found moderate limitations in Padilla's abilities to: maintain attention and concentration for extended periods of time; work in coordination with or proximity to others without being distracted; complete a normal workday/workweek without interruptions from his psychologically-based symptoms and to work at a consistent pace without an unreasonable number and length of rest periods; interact with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and, respond appropriately to changes in the work setting. (D. 7 at ECF p. 129).

At the hearing before the ALJ, Padilla testified that being around people becomes too overwhelming for him. (D. 7 at ECF p. 91). He lost his last job because of his need to leave early from work frequently due to his inability to

cope. (D. 7 at ECF pp. 89-90). He also noted he had trouble getting out of his house due to anxiety, he only going out of the house two or three times a month for doctor's appointments and to visit his children, who lived with their mother. When he does go out, it is with the assistance of his mother or father, without whose help he would probably not be able to do so. (D. 7 at ECF pp. 94-95).

## B

In the ALJ's decision, she concluded Padilla had the following severe impairments: "depression and anxiety." (D. 7 at ECF p. 21). She concluded that the depression and anxiety were "severe impairments" because "they have more than a minimal effect on the claimant's ability to perform basic work activities." Nowhere in this section of her decision does she even mention or discuss Padilla's diagnoses of panic disorder with agoraphobia and social phobia. Given this failure to even acknowledge these diagnoses at Step 2[3], she naturally gave no explanation regarding why the panic disorder with agoraphobia and social phobia are not also severe impairments.

Although the ALJ did not find the panic disorder to be a severe impairment at Step 2, she does make a few passing references to Padilla's diagnosed panic disorder when discussing his RFC. For example, she acknowledges that Dr. Ciaccio did in fact diagnose Padilla with panic disorder with agoraphobia. (D. 7 at ECF p. 25). However, she apparently dismisses this diagnosis because Dr. Ciaccio did not observe symptoms of a panic attack during his examinations of Padilla. *Id.* Indeed, after discussing each of the many visits of Padilla to his psychiatrist, the ALJ states something to the effect of "no observations of panic symptoms noted." (D. 7 at ECF p. 25). The ALJ also notes that Padilla reported that he did not have panic symptoms "everyday;" he had

---

[3] The various steps the Social Security Administration takes to determine whether or not a claimant is disabled are discussed, *infra*, in Section II.A.

4

"only 2-3 panic attacks" during one six week period; he on one visit to the doctor characterized his panic attacks as "mild;" and, finally, although he later reported increased panic attacks, "the record lacks observation of the symptom he alleges." (D. 7 at ECF p. 26).

The ALJ ultimately concluded that Padilla had an RFC to perform "a full range of work at all exertional levels," with nonexertional limitations of jobs that do not require interaction with the public or more than occasional interactions with coworkers or supervisors. (D. 7 at ECF p. 23). In light of this RFC, the ALJ concluded that Padilla could perform his past relevant work of "hand packager," and, therefore, he was disabled.

### C

Padilla argues that the ALJ erred by discounting his treating psychiatrist's diagnosis of panic disorder with agoraphobia which resulted in a flawed RFC that failed to properly account for the limitations caused by this severe impairment. The Commissioner responds that the ALJ properly considered the work-related symptoms caused by Padilla's symptoms.

### II
### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

    4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

    5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

    The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

    In the instant case, the Plaintiff essentially alleges error at Step 2, although much of the parties' arguments are focused on the RFC formulated at Step 4. Specifically, the Plaintiff alleges that the ALJ erred by failing to include a severe mental impairment of panic disorder with agoraphobia at Step 2. This error at Step 2 resulted in an improperly formulated RFC at Step 4. In other words, the allegedly erroneously formulated RFC at Step 4 was *caused* by the error at Step 2 when the ALJ made the determination regarding severe impairments. Consequently, the critical question before the Court is whether the ALJ erred at Step 2. If not, then there is no error at Step 4. If so, then the RFC formulated at Step 4 is *ipso facto* erroneous as well, according to the Plaintiff.

### B

    Step 2 is "merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015), quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). SSR

96-3p provides that if an individual's impairment does not appear from the objective medical evidence to be severe, then the ALJ must consider the limitations and restrictions caused by the individual's symptoms. *Id.* at 649. Critically, "[i]f these additional considerations cause 'more than minimal effect on an individual's ability to do basic work activities', the ALJ must find that the impairment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Curvin*, 778 F.3d at 649, quoting SSR 96-3p (emphasis in original). For mental impairments, "[m]oderate limitations under the B criteria are suggestive of a severe impairment and the ALJ should account for such limitations in setting [the] mental RFC." *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1091 (E.D. Wis. 2009), citing *Elkins v. Astrue*, 2009 WL 1124936, at *9-11 (S.D. Ind. Apr. 24, 2009); *Rasnake v. Astrue*, 2009 WL 1085969, at *14 (N.D. Ind. Apr. 22, 2009).

An error at Step 2 can, however, nevertheless be harmless, provided the ALJ considers all of a claimant's severe and non-severe impairments when determining the RFC immediately after Step 3. *Curvin*, 778 F.3d at 649. However, if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless. *Ramos*, 674 F. Supp. 2d at 1091.

C

In the present case, the ALJ first committed error at Step 2 by failing to provide any explanation regarding why she completely disregarded Padilla's well-established diagnosis of panic disorder with agoraphobia when determining his severe impairments. In her analysis at Step 2, she does not so much as mention the diagnosis, let alone explain why she did not include it as a severe impairment. This failure to even address the diagnosis at this Step in the process is enough to require a remand. An ALJ must "build an accurate and logical bridge from the evidence to her conclusion." *Suide v. Astrue*, 2010 WL

1508510, at *6 (7th Cir. Apr. 16, 2010). The ALJ here provided *nothing* by way of explanation at Step 2 in relation to the panic disorder.

This error is all the more egregious given the nature of the diagnosis in this case. Padilla's treating psychiatrist of nearly two years diagnosed him with panic disorder with agoraphobia at every single one of his thirteen office visits. Likewise, the agency psychologist's evaluation of Padilla did not call Dr. Ciaccio's diagnosis into question. Nevertheless, at Step 2 the ALJ substituted her own diagnosis of "depression and anxiety," virtually ignoring the diagnosis of the treating medical professional in this case without explanation. Such a substitution of her own diagnosis for that of the treating psychiatrist is the very definition of an ALJ improperly "playing doctor." *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The failure of the ALJ to conclude Padilla's panic disorder with agoraphobia was a "severe impairment" at Step 2 is even more bizarre when one considers what she *did* find to be a severe impairment, *i.e.* depression. Repeatedly in the treating psychiatrist's notes, he states that Padilla's depression was either in full or partial remission. Indeed, "depression" seems to be well controlled and secondary to his panic disorder, as evidenced by the fact that the agency psychologist does not even list depression as one of Padilla's impairments. (D. 7 at ECF p. 126). Yet, the ALJ found depression to have a "more than minimal effect on the claimant's ability to perform basic work activities," and, accordingly, constituted a "severe impairment." Everything in the record conclusively establishes that the panic disorder was *more* severe than Padilla's depression; the ALJ's inclusion of depression as a severe impairment and the exclusion of the panic disorder is inexplicable and further evidence of the ALJ's muddled handling of this case. Remember that at Step 2, a threshold inquiry, an impairment need only cause "more than minimal effect on an individual's ability

9

to do basic work activities for it to be severe." *Curvin*, 778 F.3d at 649. Clearly, if the depression caused more than a minimal effect, then so too did the panic disorder and, consequently, it should have been found to constitute a severe impairment at Step 2.

### D

The error at Step 2 is not harmless, for the ALJ failed to incorporate any mental impairments related to the panic disorder into the RFC. *Ramos*, 674 F. Supp. 2d at 1091 (if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless). Although the ALJ did include in the RFC restrictions related to working with the public, coworkers, and supervisors, she did so only in order to account for the severe impairments of "depression and anxiety" she found at Step 2; she did not do so to account for the panic disorder.

Indeed, her analysis at Step 4 demonstrates that she disregarded any symptoms related to the panic disorder for one oft-repeated reason, *i.e.*, Dr. Ciaccio did not observe a panic attack. No less than 11 times does the ALJ state that no symptoms of a panic attack were observed. What the ALJ does not explain is why this fact is so important.

The Diagnostic and Statistical Manual of Mental Disorders (DSM-5) defines a panic attack as "an abrupt surge of intense fear or intense discomfort that reaches a peak within minutes, and during which time four (or more) of the following symptoms occur:

    1. Palpitations, pounding heart, or accelerated heart rate
    2. Sweating
    3. Trembling or shaking
    4. Sensations of shortness of breath or smothering
    5. Feeling of choking
    6. Chest pain or discomfort
    7. Nausea or abdominal distress

      8. Feeling dizzy, unsteady, lightheaded, or faint
      9. Chills or heat sensations
      10. Paresthesias (numbness or tingling sensations)
      11. Derealization (feelings of unreality) or depersonalization (being detached from oneself)
      12. Fear of losing control or going crazy
      13. Fear of dying

DSM-V (2013), p. 208. This definition and common sense dictate that the chances of someone having a panic attack *while at the doctor's office* are remote. One would not expect Dr. Ciaccio to observe Padilla having a panic attack while being examined, yet this is exactly why the ALJ seems to discount the existence of a panic disorder. In other words, the ALJ rejected the treating psychiatrist's diagnosis of panic disorder with agoraphobia because none of his treatment notes indicated he actually *observed* a panic attack while Padilla was in his office. Such a requirement is nowhere required in the DSM-V or anywhere else for a diagnosis of panic disorder, and the ALJ improperly "played doctor" by rejecting the treating psychiatrist's diagnosis for that reason. See *Wilder*, 64 F.3d at 337.

      In sum, the ALJ's error at Step 2 infected her analysis at Step 4. Her failure to find that Padilla's panic disorder with agoraphobia is a "severe impairment" at Step 2 makes it impossible for this Court to conclude that she adequately considered the symptoms or limitations caused by that disorder at Step 4. Her passing references to the lack of *observed* panic attacks at Padilla's doctor visits do not cure the error; they compound it as explained above.

### III

      For the reasons set forth above, the Plaintiff's Motion for Summary Judgment (D. 11) is GRANTED, the Commissioner's Motion for Summary Affirmance (D. 15) is DENIED, and the matter is REMANDED pursuant to

sentence four of 42 U.S.C. § 405(g) for the ALJ to, consistent with this Order and Opinion, reconsider Step 2 and all the Steps which follow it. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on February 4, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE